OPINION
This case arises out of a prolonged dispute between neighboring property owners. Appellee, Jesse Carver, owns property across State Route 224 from appellant, Midwest Fireworks, Inc. ("Midwest"), in Deerfield Township, Ohio. Midwest is a corporation, controlled by Larry Lomaz, that manufactures and sells fireworks. Both parties have been before this and other courts on numerous occasions concerning disputes over Midwest's attempts to build on its property. The dispute currently before this court involves Midwest's appeal of the judgment entered by the Portage County Court of Common Pleas, which affirmed the decision of appellee, the Deerfield Township Board of Zoning Appeals ("BZA"), to revoke a zoning certificate issued to Midwest.
Midwest operates its fireworks factory on several parcels of land which cover eighty-six acres. The factory consists of sixteen buildings and several temporary trailers. Midwest and its predecessors operated the factory for a number of years before 1979, when Deerfield enacted its zoning ordinance. Deerfield zoned the land on which Midwest is situated as a residential district. Midwest has been operating its factory as an allowed non-conforming use since 1979.
On June 15, 1982, an explosion and fire destroyed two of Midwest's buildings. The two buildings destroyed had a combined area of 1,536 square feet. Fifteen years later, Midwest applied for a zoning certificate to replace the destroyed buildings with a sixty by one hundred and twenty foot building, a total area of 7,200 square feet. On October 8, 1997, Roy Kays, a Deerfield assistant zoning inspector, granted Midwest a zoning certificate.
On October 28, 1997, twenty days after the certificate was issued, Jesse Carver filed an appeal disputing its issuance. Deerfield Zoning Resolution 701.10 allows any person aggrieved by a decision of an administrative officer to appeal to the BZA. Nowhere is the word "aggrieved" defined by the Deerfield Zoning Resolution or the Ohio Revised Code. Appeals must be taken within twenty days of the decision being appealed and made by filing a notice of appeal with the officer from whom the appeal is taken and with the BZA. Because he was unable to locate Mr. Kays on October 28, Mr. Carver filed the appeal with the township clerk, along with a check for $100, and instructed her to forward a copy to Mr. Kays and the BZA. The proper procedure for filing the notice of appeal is not specified.
The BZA scheduled a public hearing to be held on February 11, 1998. Mr. Carver and Mr. Lomaz both appeared at the hearing. At the hearing, Mr. Lomaz referred to Mr. Carver as a "lunatic neighbor" and characterized his actions in bringing the appeal as "shenanigans." Mr. Carver's attorney accused Mr. Lomaz as attempting to "flimflam" and "bamboozle" the BZA in order to get his way. Both sides made allegations with regard to numerous documents that were missing from the zoning inspector's file. After some testimony, Mr. Lomaz declared that he wanted a continuance so that his attorneys could be present. He claimed that he had not been given proper notice of the hearing and had just learned about it that day. The BZA allowed his continuance and rescheduled a new hearing for February 21. Neither Mr. Lomaz nor his attorneys appeared at the February 21 hearing.
At the hearings, Mr. Carver testified that he appealed from the issuance of the zoning certificate because he could see the buildings from his property when riding his tractor, believed that Mr. Kays was wrong to issue the certificate, and felt that it was his duty to stop the construction of the buildings. Mr. Carver presented evidence that Mr. Kays did not properly investigate, that the proposed building was much larger than the destroyed buildings, and that fifteen years was not a reasonable amount of time for Midwest to wait before rebuilding the buildings. He argued that the delay constituted an abandonment of Midwest's non-conforming use under R.C. 519.19 and Deerfield Codified Ordinance 601.50.
Mr. Kays countered that he issued the certificate based on Deerfield Codified Ordinance 601.60, which allowed for the reconstruction of buildings damaged by fire. Mr. Kays testified that, when deciding to issue the zoning certificate, he relied on an affidavit submitted by Mr. Lomaz and the advice of Chad Murdock, a prosecutor for Portage County and counsel for the BZA. He did very little independent inspection of the property before issuing the certificate and did not attempt to determine the size of the previously destroyed buildings. He accepted Mr. Lomaz's explanation that he had "legal problems" as a valid reason for not rebuilding the buildings sooner.
On March 7, 1997, the BZA adopted a resolution to revoke the zoning certificate issued to Midwest. In response to this resolution, Midwest filed an administrative appeal with the Portage County Court of Common Pleas. The parties submitted the record from the BZA proceedings to the trial court.
Mr. Lomaz testified at a hearing before the trial court. He asserted that this action should be barred because of a settlement agreement reached between him and Deerfield Township with regard to a case against him for violating the zoning resolution. The settlement agreement in question was referred to as a conditional agreement and provided that Mr. Lomaz would apply for his property to be rezoned "industrial." If the township voted to rezone, then the parties would perform certain other acts. He further testified that, when filing his zoning application, he relied on the advice of Mr. Murdock given to him during a meeting with Mr. Murdock and Mr. Kays. He also contested the jurisdiction of the BZA to consider the appeal and Mr. Carver's standing to bring the appeal.
The trial court affirmed the decision of the BZA. Midwest appeals and raises the following assignment of error for our review:
 "The trial court committed reversible error when it affirmed a decision of a board of zoning appeals which revoked an issued zoning permit."
Although appellant raised only one assignment of error, the assignment contains four sub-arguments. Each of these arguments should have been treated as separate assignments of error, and we will treat them as such.
The four arguments raised by appellant are:
 "[1.] Did this township board of zoning appeals lack jurisdiction pursuant to R.C. 519.14 to hear and determine an appeal from a grant of a zoning permit?
 "[2.] When a statute directs that notice of appeal be filed within a certain time with the officer from whom the appeal is taken and with a board of zoning appeals, is filing with only the township clerk sufficient?
 "[3.] Must the record of an administrative appeal or at least the record on further appeal in trial court show that an administrative appeal has been taken by a `person aggrieved?'
 "[4.] Must a board of zoning appeals decision be vacated where: a) the decision is unconstitutional; b) the decision is arbitrary, capricious and unreasonable; or, c) the decision is not supported by a preponderance of substantial, reliable, and probative evidence?"
In its first argument, Midwest asserts that the BZA has no authority to revoke a zoning certificate that has already been granted. It argues that the procedure for a zoning appeal requires that the BZA act as if it were the zoning inspector and that nothing in the Ohio Revised Code or the Deerfield zoning resolution empowers a zoning inspector or the BZA to revoke a zoning permit that has already been issued. Appellant citesWaltco Truck Equip. Co. v. Tallmadge Bd. of Zoning Appeals
(1988), 40 Ohio St.3d 41, 531 N.E.2d 685 to support its position.
In Waltco, the Ohio Supreme Court held that R.C. 713.11 did not vest the board of zoning appeals of a non-chartered municipality with jurisdiction to hear appeals from the grant of a zoning certificate. Waltco, 40 Ohio St.3d 41, syllabus. In so holding, the supreme court noted that the legislature, in R.C.713.11, expressly provided boards of zoning appeals with authority to hear appeals for the refusal of zoning certificates. Thus, had it meant to provide them with authority to hear appeals from the granting of a zoning certificate, it would have stated so expressly. The instant case differs from Waltco because it involves a township, which is governed by a different statute than a non-chartered municipality.
The authority of a township board of zoning appeals is governed by R.C. 519.14(A), which specifies that it may hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of a zoning resolution. Deerfield Zoning Resolution 701.10 grants the zoning inspector the power to enforce the zoning resolution. These provisions grant the BZA broad powers to hear appeals to enforce the zoning resolution. Zoning certificates are an essential tool used to enforce the zoning resolution. See R.C. 519.16. The BZA would be unable to fulfill its statutory duty if it were unable to review the decision of a zoning inspector to issue a certificate. Midwest's first argument is without merit.
In its second argument, Midwest asserts that the BZA had no jurisdiction to consider the appeal because it was not properly commenced within the twenty days required by the zoning resolution. The evidence presented indicates that on the twentieth day after the zoning certificate was issued, Mr. Carver filed the appeal with the township clerk, with instructions to forward copies to the BZA and the zoning inspector. At that time, he could not find Mr. Kays. Midwest argues that filing the appeal with the township clerk was insufficient.
Any error in a proceeding before a board of zoning appeals is not reversible unless it affects the substantial rights of the complaining party. Freedom Twp. Bd. of Zoning Appeals v. PortageCo. Bd. of Mental Retardation (1984), 16 Ohio App.3d 387, 389,476 N.E.2d 360. The purpose of notifying the zoning inspector is so that he can transmit his records to the BZA. Id. The purpose of notifying the BZA of the appeal contemporaneously with the zoning inspector was to enable it to send out notices and schedule hearings. In the instant case, it appears that all proper parties were notified of the hearing, and the records, except for the missing documents, were transmitted to the BZA.
The township clerk is the custodian of the record of proceedings of the board of zoning appeals. Barrick v. Harter
(June 30, 1986), Stark App. No. CA-6858, unreported; Barensfeld v.Coventry Twp. Bd. of Zoning Appeals (Oct. 6, 1993), Summit App. No. 16109, unreported. Mr. Carver, therefore, properly filed notice with the BZA by filing notice with the township clerk.
Furthermore, it would be unfair to rule that the filing was not sufficient when Mr. Carver filed the appeal, along with a check, with the township clerk, a township official, who held herself out as a person authorized to accept such filing on behalf of the zoning inspector. See McCormick v. Wellston Bd. of ZoningAdjustment (Oct. 18, 1982), Jackson App. No. 463, unreported. Appellant has not demonstrated that any error in filing affected his substantial rights. Appellant's second argument is without merit.
In its third argument, Midwest asserts that Jesse Carver was not a person aggrieved by the zoning inspector's decision and, thus, had no standing to appeal. The BZA did not address the issue of Mr. Carver's standing and the trial court ruled that, because Mr. Carver's property was directly across Rt. 224, he had standing to appeal the BZA's decision.
The general rule is that, in the absence of constitutional or statutory authority, there is no inherent right to appeal from the order of an administrative agency. See Corn v. Board of LiquorControl (1953), 160 Ohio St. 9, 113 N.E.2d 360.
In Carver v. Buckeye Fireworks and Novelty Co. (1985),24 Ohio App.3d 36, 37, 492 N.E.2d 1257, we held that the same Jesse Carver was not entitled to an injunction against Buckeye Fireworks, a predecessor to Midwest, to enjoin Buckeye from violating the zoning ordinance. In so holding, we concluded that Mr. Carver could not institute an action for injunction, under R.C. 519.24, unless he could show that he would be "especially damaged" by the alleged violation.
The current case involves a challenge to a grant of a zoning certificate, not an injunction, and is governed by the Deerfield Zoning Resolution, which is fashioned after R.C. 519.15. Rather than using the term "especially damaged," R.C. 519.15 allows appeals by "persons aggrieved." Neither the revised code nor the Deerfield Zoning Resolution defines who a "person aggrieved" is for purposes of filing an administrative appeal. Black's Law Dictionary (Abridged 6 Ed. 1991) 43, defines an "aggrieved party" as:
 "One whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversly affected by a decree or judgment. One whose right of property may be established or divested. The word `aggrieved' refers to a substantial grievance, a denial of some personal, pecuniary or property right, or the imposition upon a party of a burden or obligation."
The Ohio Supreme Court, in Ohio Contract Carriers Ass'n v.Public Utilities Comm. (1942), 140 Ohio St. 160, 42 N.E.2d 758, wrote: "[i]t is fundamental that appeal lies only on behalf of a party aggrieved. Unless an appellant can show that his rights
have been invaded, no error is shown to have been committed by the court or body which entered the final order." (Emphasis in original.) Id. at 161.
"* * * [T]he court must look beyond physical proximity to determine if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person." American Aggregates Corp. v. Columbus (1990), 66 Ohio App.3d 318,322, 584 N.E.2d 26. Mr. Carver only has standing to complain of harm that is unique to himself and differs from that suffered by the community at large. See Willoughby Hills v.C.C. Bar's Sahara, Inc. (1992), 64 Ohio St.3d 24, 27,591 N.E.2d 1203.
Mr. Carver's current allegations in support of standing are no different than those made previously and rejected by this court. Carver, supra. Mr. Carver did not demonstrate that he would be aggrieved by the issuance of the zoning certificate. There was no showing that allowing Midwest to build one more building on property that already contained multiple buildings would affect Mr. Carver's personal, pecuniary or property rights. Mr. Carver is not a person aggrieved by the zoning inspector's decision. He merely alleged that Mr. Kays was incorrect in issuing the certificate, that he could see the buildings from his property, and he believed that he needed to stop the construction. That alone is insufficient to confer standing upon Mr. Carver. Appellant's third argument has merit.
Since Mr. Carver had no standing to appeal to the BZA, the BZA had no authority to revoke the zoning certificate. Because the issue of standing raised in appellant's third argument is dispositive of the appeal, we will not address his fourth argument, as it is moot.
For the foregoing reasons, the judgment of the trial court is reversed and judgment is entered in favor of appellant.
FORD, P.J., O'NEILL, J., concur.